UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATASHIA WILLIAMS,<br><br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>  Defendant. | No. 2:17-cv-00357 AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that follow, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

////
////
////

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

I. PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on April 12, 2013. Administrative Record ("AR") 158-163.[2] In her application plaintiff alleged the disability onset date was April 30, 2007. AR 34, 158. The application was disapproved initially on September 11, 2013 (AR 88-91) and upon reconsideration on March 25, 2014 (AR 97-102). Plaintiff timely requested a hearing before an administrative law judge. AR 103-11.

On August 31, 2015 Administrative Law Judge ("ALJ") Plauche Villere, Jr. presided over the hearing. AR 30-55 (transcript). Plaintiff appeared in person and testified at the hearing. AR 33-53. She was represented by an attorney. AR 30, 51-54. Evelyn Williams, plaintiff's mother, also testified at the hearing. AR 53-54. Valerie Williams, an impartial vocational expert, offered testimony via interrogatories. AR 262-270.

On October 20, 2015, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 12-25 (decision), 26-29 (exhibits). On December 20, 2016, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3 (decision).

Plaintiff filed this action on February 17, 2017. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 8. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 14 (plaintiff's summary judgment motion), 15 (Commissioner's summary judgment motion).

II. FACTUAL BACKGROUND

Plaintiff was born in 1983, and accordingly was 29 years old when she filed her application. AR 34. Plaintiff has at least a high school education. AR 340. Plaintiff can speak and understand English. AR 174.

III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'" Andrews v.

---

[2] The AR is electronically filed at ECF Nos. 11-3 – 11-11 (AR 1 – 491).

2

Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1110-11 (9th Cir. 2012) (quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F. 2d 573, 576 (9th Cir. 1988)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers, 846 F.2d at 576; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing Andrews, 53 F.3d at 1039). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

////

////

////

## IV. RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a. Plaintiff is "disabled" if she is "'[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis,

the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012).

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since April 12, 2013, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Step 2] The claimant has the following severe impairments: congenital hip dysplasia, back strain, left knee tendonitis, obesity and anxiety (20 CFR 416.920(c)).
>
> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. [Preparation for Step 4: Residual Functional Capacity] After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is able to stand for less than six hours per day; is to have only occasional contact with the public and others; and requires the opportunity to sit or stand at will.
>
> 5. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 6. [Step 5] The claimant was born on [in] 1983 and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CF'R 416.969 and 416.969(a)).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since April 12, 2013, the date the application was filed (20 CFR 416.920(g)).

AR 17-25.  As noted, the ALJ concluded that plaintiff was "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 25.

## VI. ANALYSIS

Plaintiff claims the ALJ made two reversible errors.  First, plaintiff argues that the ALJ improperly relied upon interrogatory answers from the vocational expert ("VE") regarding alternative occupations available to plaintiff, because that testimony was inconsistent with the ALJ's finding that plaintiff's residual functional capacity required the option to sit or stand at will.  ECF No. 14 at 4.  Plaintiff contends that because the Dictionary of Occupational Titles ("DOT") is silent as to whether the alternative occupations identified by the VE provide a sit/stand option, the ALJ erred by failing to appropriately resolve the conflict with further inquiry.  Id. at 6.  Second, plaintiff claims the ALJ failed to provide sufficient, concrete reasons for discounting plaintiff's testimony and improperly relied on objective medical evidence.  Id. at 13-14.  Plaintiff asserts that both errors were harmful and require remand.  Id. at 18.

### A. Existence of Alternative Work Considering Residual Functional Capacity

As noted above, the ALJ preliminarily found that plaintiff's residual functional capacity (RFC) limits her to jobs in which she has the option to sit or stand at will, among other restrictions.  AR at 20.  In then determining whether plaintiff's RFC permits her to work or renders her disabled, the ALJ accepted the opinion testimony of the VE on two matters.  First, the ALJ relied on the VE's testimony that, in light of plaintiff's RFC, she cannot perform her past relevant work.  AR 23-24.  Specifically, the VE noted that much of plaintiff's past work "preclude[s] the claimant from the opportunity to sit or stand at will."  Id. at 24.  Accordingly, the ALJ found plaintiff unable to perform past relevant work.  Id.  Next, in determining whether other jobs exist that plaintiff can perform, the ALJ relied on the VE's testimony that a person of plaintiff's age, education, work experience and RFC can perform the requirements of occupations including document preparer, sticker, and addresser, all of which are sedentary and unskilled jobs.  AR 25.  The ALJ further stated, "Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."  Id.

Plaintiff does not dispute that the information provided to the VE included the limitation of a sit/stand option. Both the VE and the ALJ affirmatively stated that the identified alternative occupations were consistent with plaintiff's RFC, including the sit/stand limitation, and with the DOT. Plaintiff nonetheless asserts error, on the ground that the DOT is silent as to the availability of a sit/stand option for these occupations, and that the ALJ was therefore obligated to make further inquiries to resolve the "conflict."

Social Security Ruling ("SSR") 00-4P, *2 provides as follows:

> When there is an apparent unresolved conflict between VE or VS [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence. . . . [T]he adjudicator will inquire, on the record, as to whether or not there is such consistency. . . .
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4P at *2-3.

Under this rule, "the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]."[3] Massachi, 486 F.3d at 1153. However, "failure of inquiry by itself does not make the ALJ's decision reversible. A decision may be overturned because of procedural error only if there are potential inconsistencies in the evidence that must be resolved." Valenzuela, 2009 WL 1537876 at *3.

For a conflict to arise, it must be obvious or apparent:

> [N]ot all potential conflicts between an expert's job suitability recommendation and the Dictionary's listing of 'maximum

---

[3] "Evidence from VEs or VSs can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. . . . Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling. The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p at *2-3.

7

> requirements' for an occupation will be apparent or obvious. And, to reiterate, an ALJ need only follow up on those that are. . . . For a difference between an expert's testimony and the [DOT]'s listings to be characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the [DOT]'s listing of job requirements that are essential, integral, or expected. . . . [T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about.

Gutierrez v. Colvin, 844 F.3d 804, 807-08 (9th Cir. 2016).

The Ninth Circuit has not directly addressed the question whether DOT silence about a sit/stand option, without more, creates a conflict with VE testimony that a claimant with such a limitation can perform an occupation. The weight of persuasive authority holds that so long as the VE takes into consideration the sit/stand option and addresses the issue of potential conflict, there is no error. See Buckner-Larkin v. Astrue, 450 Fed. Appx. 626, 628-29 (9th Cir. 2011) (unpublished) (holding that the VE adequately addressed the conflict between a sit/stand option and the DOT); Gilmour v. Colvin, 2014 WL 3749458, at *8 (E.D. Cal. 2014) (holding that no conflict existed regarding sit/stand option because DOT was silent); Dewey v. Colvin, 650 Fed. Appx. 512, 514 (9th Cir. 2016) (unpublished) ("A conflict must exist between the VE's testimony and the DOT in order to trigger the ALJ's responsibility to resolve the conflict. Here, the DOT is silent on whether the jobs in question allow for a sit/stand option. . . . There is no conflict").

Where courts have remanded, it has been because the ALJ or the VE failed to properly address a potential conflict. See Massachi v. Astrue, 486 F.3d 1149, 1153-54 (2007) (remanding in part because the ALJ failed to ask the VE whether her testimony conflicted with the DOT "and, if so, whether there was a reasonable explanation for the conflict"); Valenzuela v. Astrue, 2009 WL 1537876, *3 (N.D. Cal. 2009) (finding "potential conflict" and remanding because the ALJ failed to ask the VE whether her testimony was consistent with the DOT); Lorigo v. Colvin, 2014 WL 1577317, *11-13 (E.D. Cal. 2014) (finding error where VE's testimony generally summarizing sit/stand option was inadequately responsive).

In this case, both the VE and the ALJ took account of plaintiff's sit/stand limitation in considering her ability to perform other work. The VE was well aware that the sit/stand issue was central to plaintiff's ability to work, and identified a conflict between that limitation and past

8

relevant work, while opining that the identified alternative occupations were fully consistent with plaintiff's limitations. AR 24-25, 269. The ALJ expressly asked the VE about the existence of conflicts between the identified occupational alternatives for plaintiff's RFC and the occupational information contained in the DOT, and the VE stated unequivocally that there was no such conflict. AR 266, 269. The ALJ independently confirmed consistency with the DOT. AR 25. Thus, the ALJ made an adequate inquiry into whether a conflict existed between the VE's testimony and the DOT.

There is nothing about the identified jobs which obviously or apparently conflicts with a sit/stand option, and plaintiff has not identified any actual conflict. See Edmonds v. Berryhill, 2017 WL 1217081 at *4 (C.D. Cal. 2017) (following Gutierrez) (holding that there was no obvious or apparent conflict between the VE's testimony and the DOT because a sit/stand option did not affect any essential, integral, or expected duty of an informational clerk or cashier II job). Plaintiff fails to demonstrate how the VE's testimony is "at odds" with an essential, integral, or expected job requirement listed in the DOT for any of the three alternative occupations cited. See Gutierrez, 844 F.3d at 808. The three alternative occupations cited by the VE are all classified as "sedentary,"[4] and there is nothing about them that is objectively inconsistent with a sit/stand option. None of the suggested positions necessarily or obviously would require plaintiff to remain sitting or standing for any particular length of time; the essential tasks of a document preparer, sticker, or addresser could be performed regardless of whether plaintiff is sitting or standing. See, e.g., Edmonds, 2017 WL 1217081 at *4 (following Gutierrez and Dewey). Plaintiff, who bears the burden here, has not identified any DOT-listed job requirement for these occupations that is actually at odds with her RFC.

Accordingly, the court finds no procedural or substantive error. Manes v. Astrue, on which plaintiff relies, does not require a different result. In Manes the Ninth Circuit found that an "ALJ erred by not inquiring into the conflict between the DOT classification of the parking lot

---

[4] Document preparer (DOT 249.587-018; SVP 2; Strength Sedentary; 98,800 existing jobs); Sticker (DOT 734.687-090; SVP 2; Strength Sedentary; 29,000 existing jobs); and, Addresser (DOT 209.587-010; SVP 2; Strength Sedentary; 15,000 existing jobs). AR 269.

9

job as light work and the VE's conclusion that some parking lot attendant jobs could be filled by [plaintiff], whom the ALJ determined was limited to sedentary work with a sit-stand option." 267 Fed. Appx. 586, 588 (9th Cir. 2008). The facts of <u>Manes</u> presented an obvious conflict because the claimant was limited to sedentary work and the identified occupation was classified as light work, which is more physically demanding. Here, to the contrary, plaintiff's RFC was assessed at the "light work" level and the VE provided less physically demanding, "sedentary" options. Moreover, the VE testimony in <u>Manes</u> identified numerous variables which could affect the actual availability of a sit-stand option for parking lot attendants ("the availability of the sit-stand option was 'based on the size of the booth, or you know, policy of the employer, or whatever'"). <u>Id.</u> The VE's testimony here presents no such basis to question the availability of a sit-stand option.

Because this case presents no actual or apparent conflict between the DOT and the alternative occupations identified by the VE and relied on by the ALJ, there was no error.

### B. <u>Failure to Properly Consider Williams' Testimony</u>

Plaintiff testified regarding the extent of her physical pain, fatigue, anxiety, and other symptoms, and the adverse effects of these symptoms on her ability to function. After consideration of all the evidence, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…" AR 21. Plaintiff contends that the ALJ's credibility analysis is flawed and constitutes reversible error.

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ

10

> may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).

"The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina, 674 F.3d at 1112 (citation omitted). "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In determining credibility, the ALJ may consider a number of factors:

> (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g. movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities.

Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing SSR 88-13). In weighing a claimant's credibility, an ALJ may consider, among other things, . . . inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). "If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959. However, the Commissioner may not discount plaintiff's subjective testimony as to the severity of her

symptoms based solely on an absence of objective medical evidence. Burch, 400 F.3d at 680.

The ALJ's credibility assessment here was proper. Despite plaintiff's objection to the ALJ's use of "boilerplate language," the record shows that the ALJ discussed, at length, the reasons for his finding plaintiff's testimony "not entirely credible." AR 21. First, the ALJ referred to plaintiff's use of mild treatment to alleviate her symptoms. AR 22. An ALJ may rely on evidence that a plaintiff's symptoms are well controlled with medication to discount their subjective testimony. See Tidwell v. Apfel, 161 F.3d 599, 601-02 (9th Cir. 1999). Here, the ALJ noted that although claimant has hip dysplasia and knee tendonitis, she states that she treats the pain by using Ibuprofen, taking warm baths, or applying a heating pad. AR 21, 41, 42, 195. The ALJ stated that though plaintiff claims to feel anxious when out in public, "at times . . . almost to the point of panic," and sometimes feels anxious when her routine changes (AR 19, 210), she has also indicated that taking Cymbalta has made these symptoms tolerable. AR 21, 45, 210. He also points to plaintiff's testimony that her sleep apnea is and thyroid imbalance are controlled with medication and medical observation. AR 21, 40.

Second, the ALJ identified inconsistencies between plaintiff's testimony and her activities of daily living. AR 19, 22 204-211. Plaintiff's daily activities include taking care of her young daughter, getting her up in the morning and preparing her for school, and walking her to school; taking care of a dog; handling her own personal care; preparing two to three meals per day; cleaning, doing laundry, washing dishes, driving, shopping, and managing finances; reading and making jewelry. AR 204-211. Despite plaintiff's testimony, the ALJ determined that plaintiff appeared to be at least moderately capable of performing daily activities outside of work based on her activities of daily living. Conflicts between a claimant's testimony and her activities of daily living may constitute clear and convincing reasons for rejecting the testimony. Morgan, 169 F.3d at 599-600; Burch, 400 F.3d at 680-81. The conflicts identified by the ALJ in this case are specific and supported by the record.

Finally, the ALJ's decision provides clear and convincing reasons for rejecting plaintiff's subjective testimony regarding her symptoms by identifying inconsistencies in the medical record. AR 21. The ALJ noted that although objective imaging revealed possible hip dysplasia,

it also showed a normal femoral head and neck in plaintiff's hip and an "unremarkable left knee," with no fractures. AR 22, 280, 356. He also noted that Dr. David C. Richwerger found plaintiff euthymic, calm, stable and cooperative, with a GAF score signifying mild symptoms. AR 23, 341-43. While plaintiff claims she occasionally uses a cane to walk (AR 204), Dr. Satish Sharma, M.D., conducted an internal medicine evaluation in August 2013 and reported that the plaintiff "[d]id not use any assistive device to walk." AR 350. Thus, the ALJ properly considered the medical record in assessing plaintiff's credibility, without making such inconsistencies the sole basis upon which he made his determination. See Morgan, 169 F.3d at 600.

In sum, the ALJ provided clear reasons, substantiated by the record, for his assessment of plaintiff's credibility. Accordingly, there was no legal error.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is GRANTED; and

3. The Clerk of the Court shall enter judgment for defendant, and close this case.

SO ORDERED.

DATED: August 9, 2018

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE